IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Keystone Montessori School, a )
not-for-profit Illinois )
corporation, )
 )
       Plaintiff, )
 )
 )
  v. ) No. 18 C 2010
 )
Village of River Forest, an )
Illinois municipal )
corporation. )
 )
       Defendant. )

## MEMORANDUM OPINION AND ORDER

Twenty years ago, the Keystone Montessori School, a primary and secondary school with tax-exempt status under Section 501(c)(3) of the Internal Revenue Code, was looking for a new home in the Village of River Forest. It reached an agreement with the River Forest School District to purchase a building formerly used as a public school, but the Village Board "killed" the sale because it preferred to develop residences on the site in order to generate tax revenue.[1] The Board steered Keystone instead to a long-vacant building formerly used for commercial business. But because the Village's zoning code precluded Keystone from

---

[1] Unless otherwise stated, the facts recounted here are drawn from the complaint and its exhibits. Although I take plaintiff's allegations as true for present purposes, I do not vouch for their accuracy.

operating as a school at that site, Keystone submitted a "Request for Forbearance" asking the Village to withhold strict enforcement of the zoning code while it applied for a Planned Development Permit and undertook renovations to bring the site into compliance with the zoning ordinance. *See* Compl., Exh. A. In the Request for Forbearance, Keystone acknowledged the risk that its permit application might be denied and that it could lose any investments it made in anticipation of occupancy. *Id*. at 2.

Keystone began operating at the site under lease in September of 1998, with renovations underway and its application for a Planned Development Permit pending. In early October, the Village informed Keystone that a permit would be granted only if Keystone agreed not to seek a property tax exemption. On November 23, 1998, the Village passed Ordinance No. 2797, which granted Keystone's Planned Development Permit subject to the condition that Keystone enter into a certain "Agreement Regarding Property Taxes" with the Village (the "Agreement"). Compl., Exh. B.[2] The Agreement provides that the property would remain "fully subject to real estate taxes" throughout Keystone's use or occupancy of the premises, and that Keystone would not seek or obtain any property tax exemption. *Id.* The Agreement also sets forth the Village's rights and remedies against Keystone in the event the property were to become

---

[2] Ordinance 3002 amended the Planned Development Permit in 2003, but neither the Ordinance nor the parties' submissions describe the amendments.

2

tax exempt. These include the right to declare any Planned Development Permit authorizing Keystone's operation on the premises null and void (which the parties stipulated would render Keystone's continued operation at the site a violation of the zoning code), and the right to recover $100,000 annually, with interest, for each year the property remains tax exempt. The Agreement further provides that if Keystone fails to pay this amount, the Village may sue Keystone for breach of contract and recover liquidated damages of $500,000. *Id*. at 2-3.

The Agreement stipulates that in any legal proceeding brought to enforce the Agreement, the Village is entitled to judgment in its favor on the pleadings; that any allegations the Village raises are deemed conclusive; and that the Village is entitled to the relief it seeks. On top of that, Keystone agrees to "immediate entry of judgment against it," explicitly relinquishing any right to trial by judge or jury "or any other pre-trial procedure"; its right to engage in discovery or demand the presentation of evidence; and its right to appeal any judgment that is entered. *Id*. at 3. The Agreement provides that the Agreement shall terminate, and all of Keystone's obligations to the Village shall cease, if Keystone transfers title to the property to a non-related entity in a bona fide transfer and the property ceases to function as a school. *Id*. Keystone explicitly represented that its

legal counsel and Board of Trustees had reviewed and approved the Agreement. *Id*.

Keystone purchased the property at issue in December of 1998 and has made numerous improvements to the building over the years. Beginning in 2002, Keystone has sought to amend the Agreement. It made formal requests to the Village to reduce its tax burden in 2003, 2004, 2007, 2009, and 2011, and it has made repeated proposals that the school be permitted to obtain a real estate tax exemption while making certain negotiated payments in lieu of taxes. The Village has not agreed to any of Keystone's proposals. Keystone continues to make payments on its mortgage loan, but its property taxes for Tax Years 2016 and 2017 are delinquent, and the property is now in foreclosure. Shea Decl., Pl.'s PI Mem., Exh. 3 at ¶¶ 10, 25. To date, Keystone has paid approximately $1.1 million in real estate taxes.

Keystone filed this action in the Circuit Court of Cook County on March 6, 2018, and the Village removed on the ground that I have original jurisdiction over two of Keystone's claims, of which it asserts five in total. In Counts I-IV, Keystone seeks declarations that the Agreement is void because: it contravenes public policy; it constitutes an unconstitutional condition because it coerces Keystone into giving up its right to a tax exemption; it constitutes an illegal zoning contract; and it is an illegal perpetual contract. In Count V, Keystone asserts that the

4

Village violated its constitutional right to equal protection by singling it out as the only Village not-for-profit entity required to forfeit its right to a property tax exemption. The Village has moved to dismiss the complaint, and both parties have moved for a preliminary injunction. I resolve these motions as follows.

I.

The Village seeks to dispose of all of Keystone's claims at the threshold on the ground that they are barred by a two year (for the federal claims) or a five year (for the contract claims) statute of limitations.[3] The Village acknowledges that this affirmative defense is not ordinarily appropriate for resolution at the pleadings stage but insists that in this case, it is obvious from the complaint that Keystone's claims accrued when the Agreement was formed on November 3, 1998, and thus expired years ago.

The Village also seeks dismissal of both constitutional claims and all but one contracts claim (saving the claim that the Agreement is illegal as a perpetual contract) under Fed. R. Civ. P. 12(b)(6). In this portion of its motion, the Village argues that the allegations supporting the contracts claims and the "unconstitutional conditions" claim are contradicted by the face

---

[3] The Village devotes several pages to the argument that Keystone's contracts claims are subject to a five-year rather than a ten-year limitations period. But since its limitations theory is premised on the argument that the claims accrued twenty years ago at contract formation, the distinction is irrelevant.

5

of Agreement and that the equal protection claim fails on the allegations themselves, which reveal a rational basis—the Village's desire to obtain tax revenue from Keystone's property—for singling out Keystone among Village schools.

Because this case was removed on the basis of original federal jurisdiction, it makes sense to begin with Keystone's federal claims, since if those drop out of the case, the appropriate course is to remand to state court. *RWJ Management Co., Inc. v. BP Products North America, Inc.*, 672 F.3d 476, 478 (7th Cir. 2012) (noting "general presumption" that district court will relinquish supplemental jurisdiction and remand to state court when federal claims will not proceed).

The unconstitutional conditions doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595, 604 (2013). Accordingly, a plaintiff invoking the doctrine must plausibly allege that the government's coercive conduct caused it to relinquish a right rooted in the Constitution. In *Koontz* (as in *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374 (1994), all of which involved land-use regulation and feature prominently in Keystone's argument), the Court examined whether the conditions a local government imposed on the approval of land-use permits violated the Constitution's Takings Clause by

"pressur[ing] an owner into voluntarily giving up property for which the Fifth Amendment would otherwise require just compensation." *Koontz*, 570 U.S. at 605 (discussing *Dolan* and *Nollan*). To answer that question, the Court applied a two-part test that considers: 1) whether there is an "essential nexus" between a legitimate governmental interest and the condition imposed; and 2) whether there is "rough proportionality" between the burden on the property owner and the harm the government seeks to remedy. *Id.*

Because Keystone's invocation of the unconstitutional conditions doctrine fails at the threshold, I need not undertake the two-part *Dolan/Nollan* inquiry. The fundamental flaw in Keystone's theory is that the right it claims it was coerced into giving up—the right to seek a tax exemption—is not derived from the Constitution. As Keystone elsewhere explains, that right is rooted in the Illinois Property Tax Code. *See* Pl.'s Resp. to MTD, at 6. Indeed, asked at oral argument to explain why the Agreement's provision requiring Keystone to pay taxes was unconstitutional, counsel for Keystone responded:

> Well, it violates the Illinois constitution, which allows the legislature to create exemptions. That's the Illinois constitution. It gives the legislature that authority. The legislature has said, schools are exempt. That's, I think, an exact quote of the Illinois statute. So it's a statute established according to Illinois constitution, and they're violating that.

Tr. of 7/12/2018 H'rg at 5:22-6:3. Counsel's explanation does not articulate a federal constitutional theory. On its face, it alleges violation of an Illinois tax statute. Keystone cites no case in which a court has held that the imposition of a property tax pursuant to a state tax code effectuates a constitutional taking. In fact, the law is to the contrary. As the Supreme Court of Illinois held in *Empress Casino Joliet Corp. v. Giannoulias*, 896 N.E. 2d 277, 291 (Ill. 2008), "[i]t is well settled that the takings clauses of the federal and state constitutions apply only to the state's exercise of eminent domain and not to the state's power of taxation") (citing *County of Mobile v. Kimball*, 102 U.S. 691, 703, (1880) ("But neither is taxation for a public purpose, however great, the taking of private property for public use, in the sense of the Constitution")). *See also Eastern Enterprises v. Apfel*, 524 U.S. 498, 504 (1998) (Kennedy, J., concurring in judgment and dissenting in part) (monetary obligations imposed by statute not subject to a takings analysis), and 554-55 (Breyer, J., dissenting, joined by Stevens, Souter, and Ginsburg, JJ.) (agreeing with Justice Kennedy that the Takings Clause was not applicable and observing, "[i]f the Clause applies when the government simply orders A to pay B, why does it not apply when the government simply orders A to pay the government, i.e., when it assesses a tax?"). In short, because payment of property taxes does not implicate the Takings Clause, Keystone's claim that the

8

Village violated the federal and Illinois constitutions by conditioning the Planned Development Permit on Keystone's payment of property taxes fails as a matter of law.

Keystone's Equal Protection claim fares no better. The complaint alleges that Keystone is "the only not-for-profit use in River Forest that has been required, and is still required, to forfeit a right to property tax exemption for the ability to continue operating," and that the Village targeted Keystone for unfavorable tax treatment. Compl. at ¶¶ 68-69. But Keystone's class-of-one theory, which requires it to allege that it was irrationally singled out for discriminatory treatment, *see Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), is an awkward fit for its allegations. The complaint acknowledges that absent the Planned Development Permit, the Village's zoning ordinance prohibits the operation of a school on the property Keystone currently owns and occupies. In other words, by granting the permit, the Village actually singled out Keystone for *favorable* treatment, authorizing it to operate at a location where it was otherwise prohibited by the Village's generally-applicable zoning ordinance. True, the Village made the permit contingent on Keystone's commitment to continue paying property taxes. But Keystone's allegations do not support its claim that the Village "targeted" it for less favorable tax treatment than it accorded other not-for-profit entities. Indeed, nothing in the complaint

suggests that any other not-for-profit operates in an area where its activities are otherwise prohibited by the Village's zoning ordinance, or that it owns and occupies a presumptively tax-generating property but still exercises its statutory right to a tax exemption. In short, the complaint does not, on its face, raise a plausible inference that the Village has treated a similarly situated entity differently from how it has treated Keystone.

## II.

Because I conclude that Keystone has not stated an actionable federal claim, I dismiss those claims and remand the remainder of the case to state court. And while I express no opinion on the merits of Keystone's contracts claims, I do question the wisdom of the Village's apparent insistence upon strict compliance with such a patently one-sided agreement, regardless of the circumstances that led to its formation. The parties' cross-motions for preliminary injunction are denied as moot.

**ENTER ORDER:**

---
**Elaine E. Bucklo**
United States District Judge

Dated: July 17, 2018